## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| CHRISTOPHER FABRICANT, M.D. and MALIKA FABRICANT, Husband and Wife, | : : : | CIVIL ACTION |
| Plaintiffs, | : : : | |
| v. | : : | NO. 3:19-cv-12900 |
| INTAMIN AMUSEMENT RIDES INT. CORP., EST., INTARIDE, LLC, INTAMIN, LTD., INTERNATIONAL AMUSEMENTS, INC., INGENIEUR-BÜRO STENGEL, GmbH, MARTIN & VLEMINCKX, LTD., SIX FLAGS GREAT ADVENTURE, LLC, SIX FLAGS THEME PARKS, INC., JOHN DOES 1-20 and ABC CORPORATIONS 1-20, | : : : : : : : : : : : | Motion Date:  October 7, 2019 |
| Defendants. | : : | |

## BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT

Dated:  August 27, 2019          COZEN O'CONNOR

By:    Paul K. Leary, Jr.
       F Brenden Coller
       One Liberty Place
       1650 Market Street, 28th Floor
       Philadelphia, PA 19103
       (215) 665-2000
       pleary@cozen.com
       bcoller@cozen.com

       *Attorneys for Intaride, LLC and
       Intamin Ltd.*

# <u>TABLE OF CONTENTS</u>

**Page**

I.    INTRODUCTION ........................................................................1

II.   FACTUAL BACKGROUND .....................................................4

III.  ARGUMENT ..............................................................................5

  A.   <u>New Jersey's Statute of Repose Bars All of Plaintiffs' Claims</u> .............6

  B.   <u>In Addition to the Statute of Repose, Plaintiffs Fail to State Claims Against Moving Defendants</u> ....................................................14

   1.   <u>Plaintiffs' Claim for Design Defect is Insufficiently Pled</u>.....................14

   2.   <u>Plaintiffs' Claim for Manufacturing Defect is Insufficiently Pled</u> .......16

   3.   <u>Plaintiffs' Claim for Failure to Warn is Insufficiently Pled</u> ................18

   4.   <u>Plaintiffs Are Prohibited From Asserting Claims for Breach of Implied Warranty and Loss of Consortium and From Requesting Punitive Damages</u>........................................................20

   5.   <u>Plaintiffs' Claim for Breach of Express Warranty is  Insufficiently Pled</u>........................................................21

IV.   CONCLUSION .......................................................................24

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Arlandson v. Hartz Mountain Corp.*,
   792 F. Supp. 2d 691 (D.N.J. 2011) .............................................................22, 23

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ...............................................................................5, 14, 24

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ...............................................................................5, 14, 24

*Beom Su Lee v. Karaoke*,
   No. 18-cv-8633, 2019 WL 2537932 (D.N.J. June 19, 2019) ............................24

*Bistrian v. Levi*,
   696 F.3d 352 (3d Cir. 2012) .................................................................................6

*Brown v. Jersey Cent. Power & Light Co.*,
   394 A.2d 397 (N.J. Super. Ct. App. Div. 1978) .........................................10, 11

*In re Caterpillar, Inc.*,
   No. 1:14-cv-3722, 2015 WL 4591236 (D.N.J. July 29, 2015) ..........................24

*Cherilus v. Federal Express*,
   87 A.3d 269 (N.J. Super. Ct. App. Div. 2014) ..............................................8, 13

*Diana v. Russo Dev. Corp.*,
   799 A.2d 689 (N.J. Super. Ct. App. Div. 2002) .................................................13

*Dziewiecki v. Bakula*,
   853 A.2d 234 (N.J. 2004) .............................................................................7, 13

*In re Elk Cross Timbers Decking Mktg.*,
   No. 15-18, 2015 6467730 (D.N.J. Oct. 26, 2015) .............................................23

*McMahon v. General Dynamics Corp.*,
   933 F. Supp. 2d 682 (D.N.J. 2013) ...................................................2, 17, 19, 20

*Mercer Mut. Ins. Co. v. Proudman*,
 933 A.2d 967 (N.J. Super. App. Div. 2007) ......................................................15

*Miles v. Deluxe Bldg. Sys., Inc.*,
 No. A-5697-07T1, 2009 WL 2224258 (N.J. Super. Ct. App. Div.
 July 28, 2009)...................................................................................................13

*Oz Condo. Ass'n, Inc. v. Oz, LLC*,
 No. A-4154-17T3, 2019 WL 3214391 (N.J. Super. Ct. App. Div.
 July 17, 2019)...................................................................................................12

*Parker v. Howmedica Osteonics Corp.*,
 No. 07-02400, 2008 WL 141628 (D.N.J. Jan. 14, 2008) ..................................23

*Peruto v. TimberTech Ltd.*,
 126 F. Supp. 3d 447 (D.N.J. 2015)....................................................................21

*Rolnick v. Gilson & Sons, Inc.*,
 617 A.2d 288 (N.J. Super. Ct. App. Div. 1992) ............................................9, 10

*Sich v. Pfizer Pharmaceutical*,
 No. 1:17-cv-02828, 2017 WL 4407930 (D.N.J. Oct. 4, 2017)...........................17

*Silver v. Westinghouse Elec. Corp.*,
 No. 04-8916, 2006 WL 2385073 (D.N.J. Aug. 16, 2006)............................11, 12

*Simmons v. Stryker Corp.*,
 No. 08-3451, 2008 WL 4936982 (D.N.J. Nov. 17, 2008)............................22, 23

*State v. Perini Corp.*,
 113 A.3d 1199 (N.J. 2015) ..................................................................................6

*Tafaro v. Six Flags Great Adventure, LLC*,
 17-5607, 2018 WL 1535289 (D.N.J. Mar. 29, 2018).........................2, 15, 16, 18

*Tafaro v. Six Flags Great Adventure, LLC*,
 No. 17-cv-5607 (D.N.J. Mar. 26, 2019), ECF No. 48 .........................................9

iii

**Statutes**

N.J.S.A. § 2A:14-1.1(a) ..................................................................................6

N.J.S.A. § 2A:58C-3(a)(2) ............................................................................14

**Other Authorities**

Federal Rule of Civil Procedure 8 ..........................................................14, 24

Federal Rule of Civil Procedure 12(b)(6) ...................................................5

N.J.A.C. § 5:14A-2.2(b) ..............................................................................20

N.J.A.C. § 5:14A-4.12(b) ............................................................................19

N.J.A.C. § 5:14A-9.34(a) ............................................................................19

## I.   __INTRODUCTION__

Plaintiffs' Second Amended Complaint ("SAC") should be dismissed as to

Intaride, LLC and Intamin Ltd. ("Moving Defendants") with prejudice.

Initially, Moving Defendants respectfully submit that the claims against

them are barred by New Jersey's ten-year statute of repose for "improvements to

real property."  Based upon prior briefing, there is no dispute that Moving

Defendants' alleged conduct in connection with the Kingda Ka rollercoaster

occurred more than ten years ago.  There is also no dispute that their alleged role in

constructing, installing, and/or designing the rollercoaster and its components falls

within the scope of the statute of repose.  The only dispute between the parties is

whether Kingda Ka's seats/harnesses/locking mechanisms (collectively, "seats")

constitute "improvements to real property" as does the rest of Kingda Ka.  New

Jersey case law, as explained below, confirms that they do.

Independent of the statute of repose, Plaintiffs' claims against Moving

Defendants under the New Jersey Product Liability Act ("NJPLA"), for breach of

warranties, and for loss of consortium are all insufficiently pled or barred under

New Jersey law.

With respect to the NJPLA, Plaintiffs have insufficiently pled their claims of

design defect, manufacturing defect, and failure to warn.  New Jersey law is clear

that Plaintiffs' design defect claim requires allegations of "an available,

technologically feasible, and practical alternative design that would have reduced or prevented the plaintiff's harm without substantially impairing the reasonably anticipated or intended function of the product" and "facts which could be weighed in a future risk-utility analysis of whether the risks inherent in [the product's] design outweigh its benefits or that any proposed alternative design would preserve [the product's] functionality." *Tafaro v. Six Flags Great Adventure, LLC*, No. 17-5607, 2018 WL 1535289, at *12 (D.N.J. Mar. 29, 2018) ("*Tafaro I*").  Despite being placed on notice of this deficiency in prior briefing, Plaintiffs have not attempted to cure this omission.

Plaintiffs' manufacturing defect claim is similarly lacking.  Indeed, a manufacturing defect claim under New Jersey law requires allegations that a product "deviated from any manufacturing standard or in what respect it was defective." *See McMahon v. Gen. Dynamics Corp.*, 933 F. Supp. 2d 682, 695 (D.N.J. 2013).  Plaintiffs ignore this pleading obligation and simply allege, in a conclusory manner, that Kingda Ka's seats suffered from "design defects and/or manufacturing defects."

Plaintiffs' failure to warn claim suffers from the same omissions.  Plaintiffs have not attempted to allege how warnings *from Moving Defendants* were lacking. In doing so, Plaintiffs fail to advise the Court that, by statute, warnings were, in fact, provided for Kingda Ka.  They do not allege why those warnings were

insufficient or what additional warnings should have been provided.  Plaintiffs

were aware of these deficiencies before filing their SAC yet failed to address them.

What is more concerning is that Plaintiffs have maintained their claims for

breach of implied warranty and loss of consortium and request for punitive

damages in their SAC.  Plaintiffs' prior briefing conceded that these two claims

were subsumed by the NJPLA and that they <u>did not</u> state a valid claim for punitive

damages.  Plaintiffs' continued assertion of these claims unjustifiably ignores their

obligations under the Federal Rules of Civil Procedure.

Finally, Plaintiffs do not identify any "express warranty" provided by

Moving Defendants.  Instead, Plaintiffs simply lump Moving Defendants together

with a number of other defendants and contend that they all warranted that Kingda

Ka "was safe and fit for its intended use" without factual allegations regarding

what warranty was made, when it was made, where it was made, or by whom it

was made.  This type of "lumped" pleading is insufficient under the Federal Rules,

particularly when Plaintiffs are required to attribute specific warranties to Moving

Defendants.  This claim, therefore, should be dismissed.

For these reasons, and those set forth more fully below, Moving Defendants

respectfully request that this Court dismiss them from this matter.  And given that

claims against Moving Defendants are barred by New Jersey's statute of repose,

Moving Defendants respectfully request that this Court dismiss the claims with prejudice.

## II.   <u>FACTUAL BACKGROUND</u>

Plaintiffs' SAC contends that on or about April 23, 2017, Plaintiff-husband allegedly sustained injuries while riding the Kingda Ka rollercoaster at Six Flags Great Adventure Amusement Park. *See* Doc. No. 32 at ¶ 1. Plaintiffs contend that Kingda Ka suffered from a "defective design and/or manufacture" because of the "incorporation of a harness device with the unrestricted capacity to 'lock down'" and that it failed to warn riders who were more than six feet and two inches tall that they could not "safely ride" Kingda Ka. *Id.* at ¶ 4. As a result, Plaintiffs assert the following causes of action against Moving Defendants: "Product Liability/Design Defect/Manufacturing Defect" (First Count); "Product Liability/Failure to Warn" (Second Count); "Breach of Express and Implied Warranties" (Fourth Count); and "Loss of the Services and Society" on behalf of Plaintiff-wife (Fifth Count). *See generally id*.

This is the second motion to dismiss being made as to the identical allegations. On June 14, 2019, Intaride, LLC filed a motion to dismiss Plaintiffs' Amended Complaint. *See* Doc. No. 8. In addition to opposing the motion to dismiss, Plaintiffs also sought leave to file the SAC. *See* Doc. No. 19. This Court granted Plaintiffs' motion for leave to file the SAC on August 12, 2019, which had

the effect of mooting the pending motion to dismiss the Amended Complaint.  *See*

Doc. Nos. 30-31.  Plaintiffs filed their SAC on August 13, 2019.  *See* Doc. No. 32.

As explained below, Plaintiffs did not cure any of the deficiencies raised in the

initial motion to dismiss.

## III.   <u>ARGUMENT</u>

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal for "failure

to state a claim upon which relief can be granted."  A plaintiff must plead "enough

facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 570 (2007).  The "plausibility standard . . . asks for more

than a sheer possibility that a defendant has acted unlawfully."  *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009).  "Where a complaint pleads facts that are 'merely

consistent with' a defendant's liability, it 'stops short of the line between

possibility and plausibility of 'entitlement to relief.''"  *Id.* (citing *Twombly*, 550

U.S. at 557).

The Third Circuit has set forth a three-step inquiry on a motion to dismiss:

> First, we outline the elements a plaintiff must plead to a
> state a claim for relief.  Next, we peel away those
> allegations that are no more than conclusions and thus
> not entitled to the assumption of truth.  Finally, we look
> for well-pled factual allegations, assume their veracity,
> and then "determine whether they plausibly give rise to
> an entitlement to relief."  This last step is "a context-
> specific task that requires the reviewing court to draw on
> its judicial experience and common sense."

*Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012) (internal citations omitted).

A.   <u>**New Jersey's Statute of Repose Bars All of Plaintiffs' Claims**</u>

New Jersey's statute of repose relating to claims arising out of

improvements to real property bars Plaintiffs' claims against Moving Defendants.

The applicable statute of repose provides, in relevant part:

> **No action**, whether in contract, in **tort**, **or otherwise**, to recover damages for any deficiency in the **design**, planning, surveying, supervision or **construction** of an improvement to real property, or for any injury to property, real or personal, or for an injury to the person, or for bodily injury or wrongful death, arising out of the defective and unsafe condition of an improvement to real property, nor any action for contribution or indemnity for damages sustained on account of such injury, shall be brought against any person performing or furnishing the design, planning, surveying, supervision of construction or construction of such improvement to real property, more than 10 years after the performance or furnishing of such services and construction.

*See* N.J.S.A. § 2A:14-1.1(a) (emphasis added).  The New Jersey Supreme Court

has confirmed that the statute of repose is to be "construed broadly."  *State v.*

*Perini Corp.*, 113 A.3d 1199, 1208 (N.J. 2015).  The New Jersey Supreme Court

has also articulated three factors to determine whether the statute of repose bars an

action:  "(1) the injury sustained by plaintiff resulted from a defective and unsafe

condition of an improvement to real property; (2) [the defendant was] responsible

for performing or furnishing the design, planning, surveying, supervision of

construction, or construction of the improvement; and (3) the injury occurred more

than ten years after the performance or furnishing of the services." *Dziewiecki v. Bakula*, 853 A.2d 234, 236 (N.J. 2004).

Based upon prior briefing, there is no dispute that Moving Defendants fall within the statute's scope of entities "performing or furnishing the design, planning, surveying, supervision of construction, or construction of the improvement." There is also no dispute that the alleged injury "occurred more than ten years after the performance or furnishing of the services." Thus, *Dziewiecki*'s second and third factors are satisfied.[1] The only real dispute, therefore, is whether the seats are "improvements to real property." New Jersey law confirms that they are.

For purposes of the statute of repose, "[a]n 'improvement' is defined as a modification 'to real property [that] permanently increases the property's value.'"

---

[1] To avoid any doubt, Plaintiffs allege that Moving Defendants "were responsible for the construction and installation of the seats and harness devices contained in the cars at the Kingda Ka Roller Coaster, at the Great Adventure Amusement Park in Jackson, New Jersey." *See* Doc. No. 32 at ¶ 8. This satisfies factor two.

Moreover, Plaintiffs allege that the subject incident occurred on or about April 23, 2017. *Id.* at ¶ 1. As discussed previously in Intaride, LLC's motion to dismiss Plaintiffs' Amended Complaint, it is respectfully requested that the Court take judicial notice of the fact that Kingda Ka opened in 2005—more than ten years prior to the subject incident. *See* Doc. No. 8-1 at 11, n.2.

Plaintiffs did not previously challenge this.

*Cherilus v. Fed. Express*, 87 A.3d 269, 278 (N.J. Super. Ct. App. Div. 2014).  As

explained further,

> The factors considered when determining whether an
> item constitutes an improvement to real property include
> "whether the modification or addition enhances the use
> of the property, involves the expenditure of labor or
> money, is more than mere repair or replacement, adds to
> the value of the property, and is permanent in nature."

*Id.* (quoting *Ebert v. S. Jersey Gas Go.*, 723 A.2d 599, 601 (N.J. 1999)).  Plaintiffs

do not oppose that Kingda Ka is an "improvement to real property."  *See, e.g.*,

Doc. No. 22 at 9 (Plaintiffs noting that rollercoaster "may itself be 'uniquely

designed,' and as such can be characterized as an 'improvement to real property'");

*id.* at 12 (noting that "the Kingda Ka roller coaster itself . . . can be viewed as an

'improvement to real property'").  Plaintiffs' argument is simply that the Court

should separate the rollercoaster structure from the seats in analyzing the statute of

repose.

In this Court's August 12, 2019 Opinion granting Plaintiffs leave to file the

SAC, it noted that "the Court must determine whether the seat and harness device

that allegedly caused injuries are standardized or mass-produced on the one hand,

or specially designed on the other."  *See* Doc. No. 30 at 4.  Moving Defendants

respectfully submit that New Jersey law does not require an essential, integral

"component" of an improvement to real property to be separated from the

improvement to real property itself when analyzing the statute of repose.

8

Initially, as the Court noted in its August 12, 2019, Judge Wolfson previously considered the argument of whether the components of a rollercoaster—such as a seat or head cushion—should be separated from the actual rollercoaster structure.  In rejecting this argument, Judge Wolfson explained:

> I am unpersuaded by Plaintiff's argument that even if the roller coaster is an improvement to real property, the parts of the roller coaster that caused [the plaintiff's] injury—the head cushioning and the seat design in the interior compartment of the roller coaster—are not. *Dziewiecki*, the case on which Plaintiff relies, does not stand for the proposition that the statute of repose permits the separation of the component parts of a structure from the structure itself.  That case merely held that an installer of an in-ground swimming pool was protected by the statute of repose, but the designer of the mass-produced "pool kit," which provided the component parts for the pool, was not, because "manufacturers and suppliers of *standardized* items were [not] intended to be covered by the [statute of repose]."  Here, however, the El Toro roller coaster is not such a "standardized" or "mass-produced" item, but rather, is a unique structure, designed specifically for Six Flags.

*See* Letter Order at 5 n.3, *Tafaro v. Six Flags Great Adventure, LLC*, No. 17-cv-5607 (D.N.J. Mar. 26, 2019), ECF No. 48 ("*Tafaro II*").

Moving Defendants respectfully submit that Judge Wolfson's analysis is consistent with New Jersey law.  This Court's August 12, 2019 Order referenced *Rolnick v. Gilson & Sons, Inc.*, 617 A.2d 288 (N.J. Super. Ct. App. Div. 1992), for the proposition that the statute of repose does not apply "to an attic fan, a dishwasher, a clothes dryer, or 'any other home appliance unessential to structural

or system function.'"  *See* Doc. No. 30 at 4.  Stated another way, the statute of

repose <u>does</u> apply to those items which <u>are</u> essential to structural or system

function.  Indeed, as *Rolnick* explained, "we recognize that a different conclusion

might obtain if the appliance were an integral component of a basic system

designed and installed by the contractor, that is, the heating, plumbing, electrical or

air conditioning systems."  617 A.2d at 290.  Kingda Ka's seats are of course

"integral" to Kingda Ka.  A rollercoaster is nothing without its seats just as a

rollercoaster's seats are nothing without the remaining rollercoaster structure.

These integral components should equally be protected by the statute of repose.

The New Jersey Appellate Division's decision in *Brown v. Jersey Cent.*

*Power & Light Co.*, 394 A.2d 397 (N.J. Super. Ct. App. Div. 1978) is also helpful

on this issue.  There, the plaintiff was injured by a "4,000-volt copper-to-copper

arc" when he attempted to perform work on a "transfer switch assembly housed in

a free-standing metal cabinet."  *Id.* at 399.  One of the issues before the Appellate

Division was whether the "transfer switch assembly cabinet" was "an improvement

to real property."  *Id.* at 401.  The court explained that the "design and construction

activities relevant to the cabinet could result in liability if the cabinet is so

independent of the structure as not to be within the statutory ambit."  *Id.*  Finding

that the "transfer switch assembly cabinet" was an improvement to real property,

the Appellate Division explained

10

> The transfer-switch assembly housed in Building 118 was an integral part of an electrical system designed to supply all power needs of the missile site. Quite obviously the missile site required equipment so it could operate on internal power, as well as commercial power. Without an alternate power source the site could not have functioned as a key part of the defense network if enemy attack or other causes interrupted the commercial power supply. Therefore, the internal diesel generator power equipment, including its switch-gear assembly which allegedly caused plaintiff's injury, was not an optional frill, in addition to the normal electrical system, but was a necessity in this installation. It constituted a permanent part of one of the mechanical systems necessary to the normal function of this particular improvement to the real estate. It should therefore be included within the scope of the statute if the protection desired by the Legislature, and as broadly described by the Rosenberg case, is to be accomplished. By contrast, equipment, or chattels brought into a structure after it is architecturally and mechanically suitable for occupancy for the purpose intended should be exempted from the statute, E. g., furniture, production machinery, appliances, etc.

*Id.* at 405-06.

In *Silver v. Westinghouse Elec. Corp.*, No. 04-816, 2006 WL 2385073 (D.N.J. Aug. 16, 2006), the plaintiff brought an action after suffering injuries while performing work on a "metal clad switchgear for a transformer." *Id.* at *1. The plaintiff asserted that the defendants "designed, manufactured, distributed, installed, and/or sold the metal clad switchgear and/or its component parts, which Plaintiff claims were defective and unreasonably dangerous." *Id.* Citing to *Brown*, the Court concluded "[b]ecause the Court finds that the metal clad switchgear

11

assembly, including the cabinets and their internal components, are essential to the function of the substation and its basic systems and were designed to be a permanent part of the substantiation, it is satisfied that the assembly is an improvement to real property within the purview of the statute of repose." *Id.* at *4.

As confirmed by the New Jersey Appellate Division just recently, "[a]n improvement to real property is an integral addition or alteration without which the building [or, here, roller coaster] could not be used for its intended purpose." *Oz Condo. Ass'n, Inc. v. Oz, LLC*, No. A-4154-17T3, 2019 WL 3214391, at *5 (N.J. Super. Ct. App. Div. July 17, 2019) (internal quotation marks omitted).  It is beyond cavil that seats are "essential to the function" of a rollercoaster and that a rollercoaster is unable to properly function without same.  Seats are not some type of décor or optional component of a rollercoaster.  A rollercoaster is <u>nothing</u> without its seats to allow passengers to ride the attraction.  Indeed, the seats are necessary and integral to the rollercoaster and should not be treated any different than the remaining rollercoaster structure which Plaintiffs concede is an "improvement to real property."

Even taking Plaintiffs' anticipated argument that Kingda Ka's seats are used in other rollercoasters as true, the statute of repose still applies for the reasons stated above.  Indeed, New Jersey courts have applied the statute of repose to items

even when they are not "unique."  *See, e.g.*, *Cherilus*, 87 A.3d at 272, 278-79 (despite fact that torklift was one of nineteen installed at facility, was of similar type to other torklifts possibly used at other facilities, and was not "one-of-a-kind," court concluded it "was not a standardized product designed and manufactured for sale to the public or other commercial customers" and applied statute of repose); *Miles v. Deluxe Bldg. Sys., Inc.*, No. A-5697-07T1, 2009 WL 2224258, at *4 (N.J. Super. Ct. App. Div. July 28, 2009) (noting there is "no reason to exclude modular or mass-produced homes from the meaning of 'improvements to real property'"); *Diana v. Russo Dev. Corp.*, 799 A.2d 689, 693-96 (N.J. Super. Ct. App. Div. 2002) (noting hatch and ladder affixed to building to access roof were improvements to real property and fact item is "mass-produced . . . does not in and of itself render the statute of repose inapplicable" as "[m]uch construction in a home involves so called 'mass-produced' items").  A rollercoaster and its seats are not similar in any way to a "mass-produced product[]" which was "selected from a brochure" like that in *Dziewiecki* 853 A.2d at 237 n.2.

Moving Defendants respectfully request that this Court adopt Judge Wolfson's reasoning in *Tafaro II* and dismiss the claims against Moving Defendants pursuant to the statute of repose.

**B.** **In Addition to the Statute of Repose, Plaintiffs Fail to State Claims Against Moving Defendants**

Even assuming that the statute of repose does not apply—which it does—Plaintiffs nevertheless fail to sufficiently allege claims against Moving Defendants under *Twombly*, *Iqbal*, and Rule 8.  The deficiencies of each of Plaintiffs' claims against Moving Defendants are discussed below.

**1.** **Plaintiffs' Claim for Design Defect is Insufficiently Pled**

Plaintiffs' claim for design defect is insufficiently pled.  Under New Jersey law,

> [i]n any product liability action against a manufacturer or seller for harm allegedly caused by a product that was designed in a defective manner, the manufacturer or sell shall not be liable if: . . . (2) The characteristics of the product are known to the ordinary consumer or user, and the harm was caused by an unsafe aspect of the product that is an inherent characteristic of the product and that would be recognized by the ordinary person who uses or consumes the product with the ordinary knowledge common to the class of persons for whom the product is intended, except that this paragraph shall not apply to industrial machinery or other equipment used in the workplace and it is not intended to apply to dangers posed by products such as machinery or equipment that can feasibly be eliminated without impairing the usefulness of the product[.]

N.J.S.A. § 2A:58C-3(a)(2).  In other words, "[i]f the harm caused by a product 'would be recognized by the ordinary person who uses or consumes the product' and if the harm stems from an 'inherent characteristic of the product,' then the

14

harm is not actionable." *Mercer Mut. Ins. Co. v. Proudman*, 933 A.2d 967, 969 (N.J. Super. Ct. App. Div. 2007). "A product that satisfies this definition 'is, by statutory definition, not defectively designed.'" *Id.* "[W]here a defendant raises the absolute defense, thus establishing the lack of a defect, the plaintiff has the burden to establish 'by a preponderance of the evidence that the defendant could have eliminated the danger without impairing the usefulness of the product.'" *Id.*

In *Tafaro I*, the plaintiff offered the following allegation in support of her design defect claim:

> More specifically, upon information and belief, said ride was defective in that the seating for said ride was improperly constructed, the materials were not suitable to protect patrons including patrons such as the minor plaintiff herein, the seat back was not high enough to prevent plaintiffs' [sic] head from being jolted back due to the strong forces of the roller coaster [sic], causing her to hit her head and neck on the back of the seat. The coaster was designed and constructed with [an] improper containment system for a patron of the minor plaintiff's size and weight, subjecting her to excessive movement and there were insufficient restraints subjecting the minor plaintiff to excessive motion and movement inside the roller coaster [sic] car and such other defects as investigation of the roller coaster [sic] will reveal.

*Tafaro I*, 2018 WL 1535289, at *11 (alterations in original). Judge Wolfson found this allegation to be insufficient under New Jersey law. *Id.* at *12. In concluding so, Judge Wolfson explained the following:

> Plaintiff's proposed new allegations concerning a design defect present a somewhat closer question, but remain

> inadequate under New Jersey law. Although Plaintiff
> now seeks to plead which elements of El Toro's existing
> design were problematic and allegedly caused G.T.'s
> injuries, Plaintiff still fails to allege an available,
> technologically feasible, and practical alternative design
> that would have reduced or prevented the plaintiff's harm
> without substantially impairing the reasonably
> anticipated or intended function of the product.  For
> example there is no allegation that other, comparable
> rollercoasters exist in which adequate neck and head
> support and body restraints are provided. Plaintiff
> similarly fails to plead any facts which could be weighed
> in a future risk-utility analysis of whether the risks
> inherent in El Toro's design outweigh it benefits or that
> any proposed alternative design would preserve El Toro's
> functionality.

*Id.* (internal citations omitted).

Plaintiffs here offer little more than what was rejected in *Tafaro I*.  Plaintiffs merely allege that the harness had an "unrestricted capacity to 'lock down'" and that the rollercoaster seats were "insufficient in their size and design."  *See* Doc. No. 32 at ¶ 31.  Absent from Plaintiffs' SAC, however, are any allegations of a technologically feasible and alternative design, any allegations regarding comparable rollercoasters, and any allegations of a risk-utility analysis.  Plaintiffs' design defect claim, therefore, is insufficient and should be dismissed.

### 2.    Plaintiffs' Claim for Manufacturing Defect is Insufficiently Pled

Plaintiffs' claim regarding a manufacturing defect is similarly deficient.  For a manufacturing defect claim, Plaintiffs must allege that the product "deviated

from the design specification, formulae, or performance standards of the manufacturer or from otherwise identical units manufactured to the same manufacturing specifications or formulae." *Sich v. Pfizer Pharm.*, No. 1:17-cv-02828, 2017 WL 4407930, at *3 (D.N.J. Oct. 4, 2017).  In analyzing the allegation that because of "manufacturing defects including its sterility and/or formulation, Plaintiff Michael Sich was injected with toxic substance and was injured," this Court in *Sich* explained "Plaintiffs have not, however, explained how the drug differed from the requisite standard or how it was allegedly defective.  This claim thus lacks the factual support that it needs to reach the *Twombly/Iqbal* plausibility standards—conclusory statements are not enough."  *Id.*; *see also McMahon*, 933 F. Supp. 2d at 695 (stating that complaint failed to state manufacturing defect claim because it did not allege how the product "deviated from any manufacturing standard or in what respect it was defective").

Here, Plaintiffs allege in a conclusory manner that Kingda Ka suffered from "design defects, and/or manufacturing defects" without specifying the "manufacturing defects" which purportedly existed.  Plaintiffs merely allege that "said design defects, and/or manufacturing defects being that the said Kingda Ka Roller Coaster Seats and harnesses, incorporated a harness device with the unrestricted capacity to 'lock down' . . . and seats insufficient in their size and design."  *See* Doc. No. 32 at ¶ 31.  This does not plausibly suggest a manufacturing

17

defect claim.  Without any allegations "of any flaws or failings in the manufacturer's implementation of [the rollercoaster's] design," a manufacturing defect claim fails.  *Tafaro I*, 2018 WL 1535289, at *12.

### 3.    Plaintiffs' Claim for Failure to Warn is Insufficiently Pled

Plaintiffs' "Second Count" for failure to warn is insufficiently pled and should be dismissed.  A "manufacturer is liable for harm caused by a failure to warn if the product does not contain an adequate warning or instruction."  *Tafaro I*, 2018 WL 1535289, at *10.  "A warning is adequate if it is one that a reasonably prudent person in the same or similar circumstances would have provided with respect to the danger and that communicates adequate information on the dangers and safe use of the product."  *Id.* (internal quotation marks omitted).

Plaintiffs' base their failure to warn claim primarily upon the assertion that there were no warnings for the following:  (1) that Kingda Ka's seat harness tightened; and (2) of the purported "dangers to patrons with larger and taller body frames."  *See* Doc. No. 32 at ¶ 35.  These allegations, however, are insufficient.  As noted in *Tafaro I*, a failure to warn claim is deficient when it contains no allegations "concerning what warning was provided, what warning would have been provided by a reasonably prudent person in the same circumstances, or even what was the nature of the danger posed by [the rollercoaster] for which warning was required."  2018 WL 1535289, at *11.

18

It is anticipated that Plaintiffs will contend—as they did before—that there was "no warning at all" for Kingda Ka. That argument is inaccurate. Indeed, the New Jersey Administrative Code applying to "Carnival-Amusement Rides" dictates that "warnings" are to be posted by the owner or operator. *See, e.g.*, N.J.A.C. § 5:14A-9.34(a) (section entitled "Warning sign," stating "[o]n major or super rides that expose a rider to high speed, substantial centrifugal force or a high degree of excitement, the owner shall post a conspicuous warning sign at the entrance of the ride advising the public of the potential risk to riders"); *id.* at § 5:14A-4.12(b) (section entitled "Required notices of rider responsibility," stating "[e]ach ride owner shall post warnings and directions for each ride which comply with manufacturer's requirements . . . and this chapter. Such warnings shall be clearly legible and shall be in a conspicuous location").

Plaintiffs do not articulate what warnings were actually provided for Kingda Ka and how they were insufficient. Plaintiffs' deficient pleadings are similar to those in *McMahon*. There, the plaintiff brought a claim against the manufacturer of a gun which he was test firing while a soldier in the Army. 933 F. Supp. 2d at 684. In dismissing the failure-to-warn claim, the Court explained:

> Plaintiff concedes that General Dynamics cannot be held directly liable for the Army's warnings. Plaintiff has failed to plead how the Army's warnings were incomplete, in what way General Dynamics could have supplemented them, or what risk General Dynamics could have been aware of that the Army was not.

19

*Id.* at 697.  Without such allegations, Plaintiffs' failure-to-warn claim is insufficient and should be dismissed.[2]

Moreover, Plaintiffs' claims regarding Plaintiff-husband's height ignores that height requirements for rides are established by the New Jersey Department of Community Affairs.  *See* N.J.A.C. § 5:14A-2.2(b) (section entitled "Classification of and height requirements for rides," stating "[t]he Department shall establish height requirements based on manufacturer's recommendations, design criteria, and shall reference height restrictions from nationally recognized publications").  If Plaintiffs believe that there should have been different height requirements for Kingda Ka, then they should address that with the Department of Community Affairs.  Plaintiffs' failure-to-warn claim, therefore, should be dismissed.

### 4.    Plaintiffs Are Prohibited From Asserting Claims for Breach of Implied Warranty and Loss of Consortium and From Requesting Punitive Damages

In response to Plaintiffs' Amended Complaint, Intaride, LLC moved to dismiss Plaintiffs' claims for breach of implied warranty and loss of consortium claims and request for punitive damages.  *See* Doc. No. 8-1 at 17-21.  In response

---

[2] Plaintiff-husband concedes that he did receive some warning that "[g]uests with certain height, weight and/or body proportions may not be able to participate on certain rides if the safety restraints will not operate as designed," but stated it "would not have raised his concern."  *See* Doc. No. 32 at ¶ 24.  Plaintiffs do not articulate what warning would "have raised his concern" and why the warnings provided were not enough.

to that motion to dismiss, Plaintiffs stated they "concede that their claims for breach of implied warranty and loss of consortium are subsumed by the NJPLA, and that they have not stated a valid claim for punitive damages, at this juncture." *See* Doc. No. 22 at 20.  Despite this concession, Plaintiffs inexplicably continued to assert these claims and requested relief in their SAC in violation of the Federal Rules.  These claims, therefore, should be dismissed with prejudice.

### 5.   Plaintiffs' Claim for Breach of Express Warranty is Insufficiently Pled

Plaintiffs have not sufficiently alleged a claim for breach of express warranty ("Fourth Count").  "Under New Jersey law, 'to state a claim for breach of express warranty, [a plaintiff] must properly allege:  (1) that [the defendant] made an affirmation, promise or description about the product; (2) that this affirmation, promise or description became part of the basis of the bargain for the product; and (3) that the product ultimately did not conform to the affirmation, promise or description.'"  *Peruto v. TimberTech Ltd.*, 126 F. Supp. 3d 447, 453 (D.N.J. 2015).

Plaintiffs' claims are woefully deficient to state a claim for breach of express warranty.  The entirety of Plaintiffs' claim for breach of express (and implied) warranties is:

> The Product Liability Defendants jointly marketed and sold the Kingda Ka Roller Coaster and/or components of it, and jointly engaged in a variety of marketing activities in connection with the said Roller Coaster, involving the express and implied warranty to patrons such as Plaintiff

21

> Christopher Fabricant, M.D., that the said Roller Coaster,
> and all of its component parts, was safe and fit for its
> intended use.  In fact, however, Plaintiffs have now
> learned that was not the case.

*See* Doc. No. 32 at ¶ 41.

Courts in this District have dismissed breach of express warranty claims under similar circumstances.  In *Arlandson v. Hartz Mountain Corp.*, 792 F. Supp. 2d 691 (D.N.J. 2011), the plaintiffs brought claims that a pet flea and tick treatment was "unsafe because they sickened and, in some cases, killed their pets." *Id.* at 696.  The plaintiffs alleged that "Defendants' written warranties expressly stated that the products could be used on the types of pets set forth in the labels and that they were safe for use on that type of pet." *Id.* at 707.  The Court agreed that these allegations "fail[] to identify the actual language or source of any alleged warranty." *Id.*  Accordingly, noting the allegations were "bald assertions" and did not "identify specific affirmations or promises," the Court dismissed the claim. *Id.*

A breach of express warranty claim was dismissed on similar grounds in *Simmons v. Stryker Corp.*, No. 08-3451, 2008 WL 4936982 (D.N.J. Nov. 17, 2008).  There, the plaintiff alleged, among other things, that the defendants "expressly warranted that their pain pump was [a] safe and effective ambulatory drug delivery system and also warranted the pain pump to be fit, safe, and effective and proper for the purpose for which it was to be used." *Id.* at *1 (internal quotation marks omitted; alteration in original).  Applying *Twombly*, the Court

22

found that the plaintiff's claim was "devoid of any 'factual matter' to support the existence of an express warranty" and that the plaintiff included "a conclusory recitation of the elements of the claim" and "has alleged no facts to suggest that an express warranty existed." *Id.* at *2. Importantly, the Court noted that the plaintiff "identifies no source whatsoever of any alleged warranty." *Id.*

Plaintiffs' conclusory allegation that express warranties were made regarding safety are similar to the rejected allegations in *Arlandson* and *Simmons*. In fact, Courts in this District have rejected allegations which are more specific than those lodged by Plaintiffs here. *See, e.g.*, *Parker v. Howmedica Osteonics Corp.*, No. 07-02400, 2008 WL 141628, at *6 (D.N.J. Jan. 14, 2008) (rejecting as "bald assertions" allegations such as that express warranty was in "publicly made written and verbal assurances of safety," "press releases and dissemination via the media of uniform promotional information," and "verbal assurances made by Defendant's consumer relations personnel to the public about the safety"). Without more, Plaintiffs' breach of express warranty claim, as alleged in the SAC, should be dismissed.[3]

---

[3] In their opposition to the motion to dismiss their Amended Complaint, Plaintiffs argued that a statement on a website constituted an "express warranty." *See* Doc. No. 22 at 19. Even after being put on notice that they had not alleged any reliance on a website, Plaintiffs still did not include any allegations in the SAC regarding the website. This omission confirms that Plaintiffs never saw the statement and, therefore, cannot rely on it for a breach of express warranty claim. *See In re Elk Cross Timbers Decking Mktg.*, No. 15-18, 2015 WL 6467730, at *29 (D.N.J. Oct.

Plaintiffs' failure to state a claim under *Twombly*, *Iqbal*, and Rule 8 is further exacerbated by the fact that they "lumped together" all "Product Liability Defendants" (comprising of seven entities) in asserting a breach of express warranty claim. This type of pleading is impermissible and violates Rule 8. *See, e.g.*, *Beom Su Lee v. Karaoke*, No. 18-cv-8633, 2019 WL 2537932, at *11 (D.N.J. June 19, 2019). This type of pleading does not put Moving Defendants on any notice as to the claims against them because Plaintiffs have not articulated whether Moving Defendants made an express affirmation to Plaintiffs, the particular wording of the alleged express affirmation, and where it was made. Accordingly, Plaintiffs' claim for breach of express warranty should be dismissed.

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, Moving Defendants respectfully request that Plaintiffs' SAC be dismissed with prejudice.

---

26, 2015) ("Plaintiffs do not cite relevant law demonstrating that a plaintiff can state a breach of express warranty claim based on representations that they were not even aware of."); *In re Caterpillar, Inc.*, No. 1:14-cv-3722, 2015 WL 4591236, at *27 (D.N.J. July 29, 2015).

Respectfully Submitted,

COZEN O'CONNOR

BY:   ___/s/ F Brenden Coller_____
    Paul K. Leary, Jr., Esquire
    F Brenden Coller, Esquire
    One Liberty Place
    1650 Market Street, 28th Floor
    Philadelphia, PA 19103
    (215) 665-2000
    pleary@cozen.com
    bcoller@cozen.com

    *Attorneys for Intaride, LLC and*
    *Intamin Ltd.*

Dated:  August 27, 2019