**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| CHRISTOPHER FABRICANT and MALIKA FABRICANT, | |
| Plaintiffs, | Civ. No. 19-12900 |
| v. | **OPINION** |
| INTAMIN AMUSEMENT RIDES INT. CORP. EST. *et al.*, | |
| Defendants. | |

THOMPSON, U.S.D.J.

# INTRODUCTION

This matter comes before the Court upon the Motions to Dismiss filed by Defendant Six Flags Great Adventure, LLC ("Six Flags") (ECF No. 33) and Defendants Intaride, LLC and Intamin Ltd. ("Intaride and Intamin") (ECF No. 34) (collectively, "Defendants"). Plaintiffs oppose. (ECF Nos. 35, 36.) The Court has decided the Motions based on the written submissions of the parties and without oral argument, pursuant to Local Civil Rule 78.1(b). For the reasons stated herein, Defendant Six Flags' Motion to Dismiss (ECF No. 33) is granted in part and denied in part, and Defendants Intaride and Intamin's Motion to Dismiss (ECF No. 34) is granted in part and denied in part.

# BACKGROUND

### I. Factual Background

This case arises out of injuries that Plaintiff Christopher Fabricant sustained while riding

1

on the Kingda Ka roller coaster ("Kingda Ka") at Six Flags Great Adventure Amusement Park ("Great Adventure Park") in Jackson, New Jersey. (2d Am. Compl. ¶ 1, ECF No. 32.) On April 23, 2017, Plaintiff Christopher Fabricant visited Great Adventure Park with his sons and their friends. (*Id.* ¶ 17.) During their visit, Plaintiff Christopher Fabricant and one of his sons decided to ride Kingda Ka, the "tallest and fastest" roller coaster in Great Adventure Park. (*Id.*) Upon entering a car on Kingda Ka, Plaintiff Christopher Fabricant pulled down the harness attached to his seat. (*Id.* ¶ 19.) When the harness seemed too tight, Plaintiff Christopher Fabricant asked an attendant to assist him. (*Id.*) After the attendant called for additional help, the harness was readjusted to a position that "seemed to be comfortable" to Plaintiff Christopher Fabricant. (*Id.*) The locking system on the harness prevented loosening, but not tightening, of the harness during the ride. (*Id.* ¶ 20.) While the roller coaster accelerated, Plaintiff Christopher Fabricant's harness tightened against his shoulders, causing him temporary yet considerable pain. (*Id.* ¶¶ 21–22.)

Plaintiffs allege that, as a result of the ride, Plaintiff Christopher Fabricant ruptured two intervertebral discs in his cervical spine, causing inflammation, compression of his spinal cord, numbness in his hands and feet, back pain, and weakness and spasticity of his lower extremities. (*Id.* ¶ 26.) He was later diagnosed with progressive cervical myelopathy and underwent surgery to decompress his spinal cord and fuse vertebra adjacent to his ruptured discs. (*Id.* ¶ 27.)

On the day Plaintiff Christopher Fabricant visited Great Adventure Park, he received a printed Map & Guide of the park. (*Id.* ¶ 23.) The Map & Guide indicated that the height maximum for Kingda Ka was seventy-seven inches—nearly three inches greater than Plaintiff Christopher Fabricant's height. (*Id.*) The Map & Guide also included "Ride Restrictions," which read that "[g]uests with certain height, weight and/or body proportions may not be able to participate on certain rides if the safety restraints will not operate as designed." (*Id.* ¶ 24.)

Defendants Six Flags and Six Flags Theme Parks, Inc. are the owners and operators of Great Adventure. (*Id.* ¶ 2.) Defendants Intamin Amusement Rides Int. Corp. Est., Intaride LLC, Intamin Ltd., and Ingenieur-Burö Stengel GmbH (collectively, the "Manufacturer Defendants") are the manufacturers and designers of the seats and harnesses in the cars of Kingda Ka. (*Id.* ¶ 1.)

## II. Procedural History

On April 18, 2019, Plaintiffs filed the Complaint in the Superior Court of New Jersey, Law Division, Ocean County. (Compl. at 1, 17, Ex. A, ECF No. 1.) On May 15, 2019, while this case was still in state court, Plaintiffs filed an Amended Complaint. (Notice of Removal ¶ 2, ECF No. 1.) Defendant Six Flags removed to this Court on May 24, 2019. (ECF No. 1.) On May 29, 2019, Defendant Six Flags filed a Motion to Dismiss. (ECF No. 5.) On June 14, 2019, Defendant Intaride, LLC filed a Motion to Dismiss. (ECF No. 8.)[1] Because the caption of the Amended Complaint named "Intaride LLC a/k/a Intamin Ltd.," the Clerk of the Court advised Plaintiffs that the Court would be unlikely to accept a Summons or Waiver of Service as to Intamin Ltd. (Meyers Decl. ¶ 6, ECF No. 19-4.) On August 12, 2019, the Court dismissed Defendants Six Flags' and Intaride, LLC's Motions to Dismiss as moot and granted Plaintiffs leave to file a Second Amended Complaint. (Dismissal Order at 1, ECF No. 31.)

Plaintiffs filed a Second Amended Complaint on August 13, 2019. (ECF No. 32.) Plaintiffs allege five counts: (1) design and manufacturing defects by Manufacturer Defendants (2d Am. Compl. ¶¶ 30–33);[2] (2) failure to warn by Manufacturer Defendants (*id.* ¶¶ 34–36); (3) negligence in improperly harnessing Plaintiff Christopher Fabricant and failure to advise

---

[1] On June 20, 2019, Plaintiff filed a Motion to Remand this case to state court (ECF No. 10), which the Court denied (ECF Nos. 23, 24).
[2] Plaintiffs characterize Manufacturer Defendants as the "Products Liability Defendants" in the Second Amended Complaint. (2d Am. Compl. ¶ 31.)

3

Plaintiff Christopher Fabricant that he could not safely ride Kingda Ka by Defendants Six Flags and Six Flags Theme Parks, Inc. (*id.* ¶¶ 37–39);[3] (4) breach of express and implied warranties by Manufacturer Defendants (*id.* ¶¶ 40–42); and (5) Plaintiff Malika Fabricant's loss of consortium, society, and services of her spouse against all Defendants (*id.* ¶¶ 43–44). Plaintiffs seek compensatory and punitive damages. (*Id.* at 17.)

On August 27, 2019, Defendant Six Flags and Defendants Intaride and Intamin filed separate Motions to Dismiss Plaintiffs' Second Amended Complaint. (ECF Nos. 33, 34.) Plaintiffs opposed both Motions. (ECF Nos. 35, 36.) On January 13, 2020, the Court granted Plaintiffs' voluntary dismissals of Defendants International Amusements Inc., Martin & Vleminckx Ltd., and Martin & Vleminckx USA, LLC. (ECF Nos. 41, 42.) The Motions to Dismiss are presently before the Court.

## **LEGAL STANDARD**

A motion under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the sufficiency of a complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). The defendant bears the burden of showing that no claim has been presented. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). When considering a Rule 12(b)(6) motion, a district court conducts a three-part analysis. *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'take note of the elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must accept as true all well-pleaded factual allegations and construe the complaint in the light most favorable to the plaintiff. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009); *see also Connelly v. Lane Constr.*

---

[3] Plaintiffs characterize Defendants Six Flags and Six Flags Theme Parks, Inc. as the "Negligence Defendants" in the Second Amended Complaint. (2d Am. Compl. ¶ 38.)

*Corp.*, 809 F.3d 780, 786–87 (3d Cir. 2016). However, the court may disregard any conclusory legal allegations. *Fowler*, 578 F.3d at 210 (quoting *Iqbal*, 556 U.S. at 679). Finally, the court must determine whether the "facts . . . are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Iqbal*, 556 U.S. at 679). A complaint that does not demonstrate more than a "mere possibility of misconduct" must be dismissed. *Gelman v. State Farm Mut. Auto. Ins. Co.*, 583 F.3d 187, 190 (3d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 679).

Although a district court generally must confine its review to the pleadings on a Rule 12(b)(6) motion, *see* Fed. R. Civ. P. 12(d), "a court may consider certain narrowly defined types of material" beyond the pleadings, *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999). The court may consider "matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case." *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (citation omitted). The court may also consider "documents . . . *explicitly relied* upon in the complaint . . . without converting the motion [to dismiss] into one for summary judgment." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

## DISCUSSION

### I. Manufacturer Defendants

    A. *Count I: Design and Manufacturing Defects under the NJPLA*

        1. <u>Statute of Repose</u>

Defendants Intaride and Intamin contend that the products liability claims against them are time-barred by New Jersey's ten-year statute of repose. The relevant part of the statute of repose bars all actions "to recover damages for any deficiency in the design, planning, surveying, supervision or construction of an improvement to real property . . . or for an injury to the person .

5

. . arising out of the defective and unsafe condition of an improvement to real property" brought against the persons performing such services more than ten years after the services are performed. N.J.S.A. § 2A:14-1.1(a). The statute of response applies when:

> (1) the injury sustained by plaintiff resulted from a defective and unsafe condition of an improvement to real property; (2) [the defendant was] responsible for performing or furnishing the design, planning, surveying, supervision of construction, or construction of the improvement; and (3) the injury occurred more than ten years after the performance or furnishing of the services.

*Dziewiecki v. Bakula*, 853 A.2d 234, 236 (N.J. 2004).

To satisfy the third prong of *Dziewiecki*, Defendants Intaride and Intamin request that the Court take judicial notice of the "fact that Kingda Ka opened in 2005—more than ten years prior to the subject incident." (Defs. Intaride and Intamin's Br. at 7 n.1, ECF No. 34-1.) In making this request, Defendants cite to their previous Motion to Dismiss, which referred the Court to several newspaper articles that allegedly demonstrate that Kingda Ka opened to the public on May 21, 2005. (*Id.*; *see also* Intaride, LLC's 1st Mot. to Dismiss Br. at 11 n.2, ECF No. 8-1.) The Court may take judicial notice of a fact that is "not subject to reasonable dispute" because the fact is either "generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(a)–(b). The date on which Kingda Ka opened is not generally known within the District of New Jersey, nor can it be accurately and readily determined from the sources that Defendants provide. The Court would need to take additional steps to confirm that the newspaper articles cited by Defendants Intaride and Intamin show all of the relevant information necessary to determine when the statute of repose was triggered. Additionally, because this case is about the individual seats and harnesses on the Kingda Ka roller coaster, the dates of any replacements, repairs, or alterations of the roller coaster's components over time are relevant to the Court's

6

assessment of the bounds of the statute of repose. (*Cf.* Letter Order at 4 n.2, *Tafaro v. Six Flags Great Adventure, LLC,* Civ. No. 17-5607 (D.N.J. Mar. 26, 2019), ECF No. 48.) Accordingly, without a comprehensive picture of the relevant facts—obtainable in discovery—the Court will not take judicial notice of the triggering date of the statute of repose at this time.

Defendants Intaride and Intamin further argue that Kingda Ka's seats and harnesses are "improvements to real property" within the meaning of the statute of repose, thereby satisfying the first prong of *Dziewiecki*. (Defs. Intaride and Intamin's Br. at 7–13.) Because the Court has already concluded that it will not dismiss Plaintiffs' claims because of the statute of repose at this juncture, the Court need not analyze whether Kingda Ka's seats and harnesses constitute "improvements to real property" within the statute of repose now. In any case, an analysis of whether *Dziewiecki*'s first prong is satisfied would require additional facts, extraneous to the Second Amended Complaint, that the Court is unable to consider at this stage in the case. (*See* Dismissal Op. at 5–6, ECF No. 30 (citing Fed. R. Civ. P. 12(d); *In re Rockefeller Ctr. Props.*, 184 F.3d at 287).)

        2.        <u>Design Defects</u>

To prove a design defect under the New Jersey Products Liability Act ("NJPLA"), N.J.S.A. § 2A:58C-1 *et seq.*, a plaintiff must demonstrate by a preponderance of the evidence "that the product causing the harm was not reasonably fit, suitable or safe for its intended purpose because it . . . was designed in a defective manner." N.J.S.A. § 2A:58C-2; *see also Jurado v. Western Gear Works*, 619 A.2d 1312, 1317 (N.J. 1993). A plaintiff must prove that "the product was defective, that the defect existed when the product left the manufacturer's control, and that the defect proximately caused injuries to . . . a reasonably foreseeable or intended user." *Myrlak v. Port Authority of N.Y. and N.J.*, 723 A.2d 45, 52 (N.J. 1999) (citations

omitted).

In the Second Amended Complaint, Plaintiffs argue that the "unrestricted capacity" of Kingda Ka's harness system to "lock down" against a rider's body during the ride and the low height of the seats on Kingda Ka are design defects that caused Plaintiff Christopher Fabricant's injuries. (2d Am. Compl. ¶ 31.) Defendants Intaride and Intamin respond that under the NJPLA, manufacturers are not liable if "[t]he characteristics of the product are known to the ordinary consumer or user, and the harm was caused by an unsafe aspect of the product that is an inherent characteristic of the product and that would be recognized by the ordinary person who uses or consumes the product." (Defs. Intaride and Intamin's Br. at 14–15 (quoting N.J.S.A. § 2A:58C-3(a)(2)).) The Court—unequipped with standards or comparisons beyond what is alleged in the Second Amended Complaint—is unable to determine whether the risks that materialized in this case are the types of risks that are both known to the ordinary consumer and inherent in roller coaster riding. Therefore, Defendants Intaride and Intamin's defense does not warrant dismissal of Plaintiffs' Second Amended Complaint at this point in this case.

Defendants Intaride and Intamin further argue that courts in this district have required plaintiffs to plead "an available, technologically feasible, and practical alternative design that would have reduced or prevented the plaintiff's harm without substantially impairing the . . . intended function of the product." (*Id.* at 16 (quoting *Tafaro v. Six Flags Great Adventure, LLC*, 2018 WL 1535289, at *12 (D.N.J. Mar. 29, 2018) (dismissing a defective design claim involving a roller coaster where the plaintiff did not allege that an available alternative design existed)).) Although Plaintiffs do not explicitly describe an alternative design, such a description is not a strict pleading requirement of defective design claims. *Mendez v. Shah*, 28 F. Supp. 3d 282, 297 (D.N.J. 2014) (stating that there is no "per se rule that Plaintiffs must, under all circumstances,

8

provide a reasonable alternative design"). "[A] plaintiff must plead *either* that the product's risk outweighs its harm, or that an alternate design exists." *Id.* at 297–98 (citation omitted) (emphasis added). Plaintiffs, while not explicitly weighing the utility and risks of Kingda Ka's component parts in the Second Amended Complaint, weigh the utility and risks when describing the "unreasonable risk of whiplash injury to the vertebrae of [riders'] necks and spines" associated with Kingda Ka. (*See* 2d Am. Compl. ¶ 32.) Plaintiffs' descriptions of Kingda Ka's risks and characterizations of the reasonableness of those risks are sufficient to plead design defect claims under New Jersey law. Accordingly, Defendants Intaride and Intamin's Motion is denied to the extent that it seeks dismissal of Plaintiffs' design defect claims against Manufacturer Defendants.

        3.      Manufacturing Defects

Under New Jersey law, a manufacturing defect exists if a product "deviated from the design specifications, formulae, or performance standards of the manufacturer or from otherwise identical units manufactured to the same manufacturing specifications or formulae." N.J.S.A. § 2A:58C-2. To support their manufacturing defect claims, Plaintiffs allege that Kingda Ka incorporates a harness device with the "unrestricted capacity to 'lock down' against the shoulders, chest, and/or cervical spine of individual riders" (2d Am. Compl. ¶ 31), and that the backs of Kingda Ka's seats do not extend high enough to protect individuals who are Plaintiff Christopher Fabricant's height (*id.* ¶ 32). Courts in this district have dismissed manufacturing defect claims when they failed to allege how the product "deviated from any manufacturing standard or in what respect [the product] was defective." *See, e.g.*, *McMahon v. Gen. Dynamics Corp.*, 933 F. Supp. 2d 682, 695 (D.N.J. 2013) (dismissing a manufacturing defect claim involving a firearm when such allegations were absent from the pleadings). Simply explaining that Kingda Ka's seat was too low, or that Kingda Ka's harness system enabled mid-ride

9

tightening, but not loosening, fails to explain how the seats and harnesses deviated from any applicable manufacturing standard or from otherwise identical units manufactured to the same specifications. Accordingly, Defendants Intaride and Intamin's Motion is granted to the extent that it seeks dismissal of Plaintiffs' manufacturing defect claims against Manufacturer Defendants.

      B.    *Count II: Failure to Warn under the NJPLA*

A manufacturer is liable for harm caused by a failure to warn if the product does not contain an adequate warning or instruction. N.J.S.A. § 2A:58C-2. "An adequate product warning or instruction is one that a reasonably prudent person in the same or similar circumstances would have provided with respect to the danger and that communicates adequate information on the dangers and safe use of the product . . . ." *Id.* § 2A:58C-4.

In Count II of the Second Amended Complaint, Plaintiffs argue that the Manufacturer Defendants failed to provide adequate warnings of the dangers associated with Kingda Ka's seats and harnesses. (2d Am. Compl. ¶¶ 35–36.) These dangers include the

> dangers of uncontrollable, and irreversible tightening of the harness devices, while the ride is progressing, and the dangers to patrons with larger and taller body frames . . . if a substantial portion of their head and/or neck was above the rear of the seat, from whiplash forces generated by the extreme speed, and extreme torqueing forces generated by the Kingda Ka Roller Coaster.

(*Id.* ¶ 35.) Defendants Intaride and Intamin argue that the NJPLA requires a more detailed factual articulation of "what warning was provided, what warning would have been provided by a reasonably prudent person in the same circumstances, or even what was the nature of the danger posed by [the roller coaster] for which warning was required." (Defs. Intaride and Intamin's Br. at 18 (quoting *Tafaro*, 2018 WL 1535289, at *11), 19–20 (citing *McMahon*, 933 F. Supp. 2d at 684).) The Court disagrees that Plaintiffs have

10

failed to satisfy the pleading requirements for failure-to-warn claims under the NJPLA. Plaintiffs adequately allege that Manufacturer Defendants did not provide warnings of the dangers that Plaintiff Christopher Fabricant experienced. (*See* 2d Am. Compl. ¶¶ 35–36.) To support their allegations, Plaintiffs enumerate those dangers with sufficient specificity. Accordingly, Defendants Intaride and Intamin's Motion to Dismiss with respect to Count II is denied.

    C.    *Count IV: Breach of Express and Implied Warranties*

In Count IV of the Second Amended Complaint, Plaintiffs argue that the Manufacturer Defendants breached express and implied warranties that Kingda Ka "was safe and fit for its intended use." (2d Am. Compl. ¶¶ 41–42.) The NJPLA "established the sole method to prosecute a product liability action" such that "only a single product liability action remains." *Volin v. Gen. Elec. Co.*, 189 F. Supp. 3d 411, 417 (D.N.J. 2016) (citing *Tirrell v. Navistar Int'l, Inc.*, 591 A.2d 643, 647–48 (N.J. Super. Ct. App. Div. 1991)). "New Jersey law no longer recognizes breach of implied warranty, negligence, and strict liability as viable separate claims for harm deriving from a defective product." *Clements v. Sanofi-Aventis, U.S., Inc.*, 111 F. Supp. 3d 586, 596 (D.N.J. 2015). Accordingly, the "Third Circuit, the district court [of New Jersey], and the state courts of New Jersey have consistently dismissed product liability claims based on those common-law theories." *Id.* at 597 (collecting cases); *see also Thomas v. Ford Motor Co.*, 70 F. Supp. 2d 521, 528 (D.N.J. 1999) (citing New Jersey Appellate Division cases) ("New Jersey courts have interpreted the language of [the NJPLA] to preclude independent claims for breach of an *implied* warranty in products liability cases . . . ."). Therefore, Plaintiffs' claim that the Manufacturer Defendants breached an implied warranty is subsumed by Plaintiffs' products liability claims under the NJPLA and dismissed.

However, claims alleging breach of an *express* warranty are not subsumed by the NJPLA. *Thomas*, 70 F. Supp. 2d at 528. Under New Jersey law, "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise." N.J.S.A. § 12A:2-313(1)(a). "[T]he plaintiff in a warranty action need not establish the existence of a defect; the failure of the goods to perform as warranted is sufficient." *Ford Motor Credit Co., LLC v. Mendola*, 48 A.3d 366, 375 (N.J. Super. Ct. App. Div. 2012) (citing *Spring Motors Distribs., Inc. v. Ford Motor Co.*, 98 N.J. 555, 586 (N.J. 1985)).

In Count IV of the Second Amended Complaint, Plaintiffs allege that the Manufacturer Defendants "jointly engaged in a variety of marketing activities in connection with [Kingda Ka], involving the express and implied warranty to patrons . . . that [Kingda Ka] . . . was safe and fit for its intended use." (2d Am. Compl. ¶ 41.) However, Plaintiffs do not point to any warranty that Manufacturer Defendants provided. Courts in this district have dismissed express warranty claims that fail to identify specific language or sources of warranties. *See, e.g.*, *Arlandson v. Hartz Mountain Corp.*, 792 F. Supp. 2d 691, 707 (D.N.J. 2011) (characterizing the plaintiffs' express warranty allegations as "'bald assertions' that fail to identify specific affirmations or promises" by the defendants). In their Opposition, Plaintiffs request that the Court consider language on Defendant Intamin Ltd.'s website. (Opp'n to Defs. Intaride and Intamin's Mot. at 27, ECF No. 36.) However, the Court will not consider this information, which is extraneous to the pleadings, at this stage of the case. For the foregoing reasons, Plaintiffs' express warranty claim against Manufacturer Defendants is dismissed.

D.  *Count V: Loss of Consortium Caused by Manufacturer Defendants*

Like Plaintiffs' implied breach of warranty claim, Plaintiff Malika Fabricant's claim

against Manufacturer Defendants for the loss of consortium, society, and services of her spouse are subsumed by Plaintiffs' NJPLA claims. The NJPLA "subsumes any cause of action 'for harm caused by a product, irrespective of the theory underlying the claim, except actions for harm caused by breach of an express warranty.'" *Clements*, 111 F. Supp. 3d at 596 (quoting N.J.S.A. § 2A:58C-1(b)(3)). In determining whether a tort claim is subsumed under the NJPLA, the New Jersey Supreme Court has explained that "[t]he essential question is whether [a plaintiff's] effort to recover . . . damages is limited by the definition of 'harm' in the [NJPLA]." *Sinclair v. Merck & Co.*, 948 A.2d 587, 593 (N.J. 2008). The NJPLA defines "harm" as:

> (a) physical damage to property, other than to the product itself; (b) personal physical illness, injury or death; (c) pain and suffering, mental anguish or emotional harm; and (d) any loss of consortium or services or other loss deriving from any type of harm described in subparagraphs (a) through (c) of this paragraph.

N.J.S.A. § 2A:58C-1(b)(2). Loss of consortium is among the harms enumerated in the NJPLA. Therefore, Plaintiff Malika Fabricant's common law loss of consortium claim as raised against the Manufacturer Defendants is subsumed by the NJPLA. *See Chester v. Boston Sci. Corp.*, 2017 WL 751424, at *4 (D.N.J. Feb. 27, 2017) (concluding that a loss of consortium claim is subsumed by the NJPLA when raised against a product manufacturer).

## II. Defendants Six Flags and Six Flags Theme Parks, Inc.

### A. *Count III: Negligence and Emotional Distress*

The Court understands Plaintiffs' negligence claims against Defendants Six Flags and Six Flags Theme Parks, Inc. in Count III as containing two sub-claims. First, Plaintiffs argue that Defendant Six Flags improperly harnessed Plaintiff Christopher Fabricant into his seat on Kingda Ka. (2d Am. Compl. ¶ 38.) Second, Plaintiffs contend that Defendant Six Flags failed "to advise Plaintiff Christopher Fabricant . . . that he could not safely ride the Kingda Ka Roller

13

Coaster by reason of his body size." (*Id.*)

Defendant Six Flags argues that Count III is subsumed by the NJPLA. (Def. Six Flags' Br. at 4–9, ECF No. 33-3.) Under this theory, Defendant Six Flags argues that it is not subject to liability in this case. (*Id.*) The Court agrees that Defendant Six Flags is not a proper defendant for purposes of an NJPLA products liability claim. Only manufacturers and sellers of products can be held liable for design defects, manufacturing defects, and failures to warn under the NJPLA. N.J.S.A. § 2A:58C-2. A "seller of a product" or "product seller" under the NJPLA does not include "a provider of professional services in any case in which the sale or use of a product is incidental to the transaction and the essence of the transaction is the furnishing of judgment, skill or services." *Id.* § 2A:58C-8. New Jersey courts and courts in this district have concluded that rides and attractions at amusement parks are incidental to amusement parks' furnishing of services and therefore that amusement parks are not "sellers" of their rides and attractions. *See, e.g.*, *Tafaro*, 2018 WL 1535289, at *3 (citing *Crowley v. Six Flags Great Adventure*, 2017 WL 1836155, at *7 (D.N.J. May 8, 2017); *J.Z. v. Six Flags Great Adventure, LLC*, 2016 WL 5419420, at *1 (N.J. Super. Ct. App. Div. May 28, 2013)).

However, the Court disagrees that the NJPLA subsumes Plaintiffs' negligence claims against Defendant Six Flags. Plaintiffs' negligence claims against Defendant Six Flags are not allegations of product defects; they are allegations of negligence in the *operation* of Kingda Ka and Great Adventure Park. Other courts in this district have found that, while the NJPLA covers causes of action arising out of harm caused by defective *products*, it does not cover causes of action arising out of harm caused by negligent actions of *employees*. *See J.Z. v. Six Flags Great Adventure, LLC*, 2016 WL 5419420, at *3 (interpreting N.J.S.A. § 2A:58C-1); *Guillen v. Six Flags Great Adventure, LLC*, 2015 WL 9582141, at *5 (D.N.J. Dec. 29, 2015) ("Six Flags'

14

heads-I-win, tails-you-lose position is that this must be an NJPLA case, and that the NJPLA does not apply as a matter of law. That is very close to a claim that there is no such thing as an action against an amusement park based on injuries sustained on a ride. That simply is not so . . . ."). Accordingly, the NJPLA does not subsume Plaintiffs' negligence claims against Defendant Six Flags in Count III.

Moreover, Plaintiffs state plausible claims that Defendants Six Flags and Six Flags Theme Parks, Inc. were negligent. The elements of negligence are (1) a duty of care, (2) a breach of that duty, (3) causation, and (4) actual damages. *Townsend v. Pierre*, 110 A.3d 52, 61 (N.J. 2015). Plaintiff Christopher Fabricant received a Map & Guide indicating that the height maximum for Kingda Ka was seventy-seven inches—nearly three inches greater than his own height. (2d Am. Compl. ¶ 23.) He claims that he was "misled by these printed guidelines" and should have been advised by Defendant Six Flags that he could not ride Kingda Ka safely. (*Id.* ¶¶ 23, 38.) "The standard of care [in a negligence claim] is flexible and fact-dependent, and negligence might be inferred from 'all the circumstances,' including the conduct of Six Flags . . . ." *Guillen*, 2015 WL 9582141, at *5 (citing *Kahalili v. Rosecliff Realty, Inc.*, 141 A.2d 301, 305–07 (N.J. 1958)). Plaintiffs have articulated sufficient facts about Defendant Six Flags' conduct and Plaintiffs' injuries to make it plausible that Defendant Six Flags owed Plaintiff Christopher Fabricant a duty of care, that Defendant Six Flags breached that duty of care, and that the breach caused Plaintiffs' injuries. Consequently, Defendant Six Flags' Motion is denied to the extent that it seeks dismissal of Plaintiffs' claims that Defendant Six Flags was negligent in failing to advise Plaintiff Christopher Fabricant that he could not safely ride Kingda Ka because of his body size and in improperly harnessing Plaintiff Christopher Fabricant into his seat.

Plaintiffs also contend in Count III that, as a result of Defendant Six Flags' negligence,

Plaintiff Christopher Fabricant "sustained severe and permanent injuries of both a physical and emotional nature" and that Plaintiff Malika Fabricant has suffered "severe emotional anguish." (2d Am. Compl. ¶ 39.) Defendant Six Flags interprets this count as stating a claim for intentional or negligent infliction of emotional distress. (Def. Six Flags' Br. at 9–12.) However, Plaintiffs concede that they do not make any claims of intentional or negligent infliction of emotional distress. (Opp'n to Six Flags' Mot. at 8, ECF No. 35.) Therefore, the Court need not address Defendant Six Flags' argument involving intentional or negligent infliction of emotional distress.

B. *Count V: Loss of Consortium Caused by Defendant Six Flags*

Under New Jersey law, a plaintiff may recover damages for loss of consortium in a negligence case. *See, e.g.*, *Tichenor v. Santillo*, 527 A.2d 78, 81–82 (N.J. Super. Ct. App. Div. 1987). Because Plaintiffs' negligence claims against Defendant Six Flags may proceed, Plaintiff Malika Fabricant's claim for loss of consortium derived from those negligence claims may also proceed.

## III. Punitive Damages

Plaintiffs seek "punitive damages pursuant to the [NJPLA]." (2d Am. Compl. at 17.) Plaintiffs previously conceded that they have not stated a valid claim for punitive damages. (Defs. Intaride and Intamin's Br. at 21 (citing Pls.' Previous Opp'n at 20, ECF No. 22)).) Plaintiffs do not oppose Defendants' present Motions to dismiss their claim for punitive damages.

Plaintiffs have not plausibly pleaded that punitive damages are warranted in this case. Under the New Jersey Punitive Damages Act, N.J.S.A. § 2A:15-5.9 *et seq.*, a plaintiff must prove "by clear and convincing evidence . . . that the harm suffered was the result of the defendant's acts or omissions, and such acts or omissions were actuated by actual malice or

16

accompanied by a wanton and willful disregard of persons who foreseeably might be harmed by those acts or omissions." *Id.* § 2A:15-5.12. "This burden of proof may not be satisfied by proof of any degree of negligence including gross negligence." *Id.* "There must be circumstances of aggravation or outrage, which may consist of such a conscious and deliberate disregard of the interests of others that the [defendant's] conduct may be called wanton and willful." *Tafaro*, 2018 WL 1535289, at *8 (citing *Dong v. Alape*, 824 A.2d 251, 257 (N.J. Super. Ct. App. Div. 2003)). New Jersey courts have limited awards of punitive damages to "exceptional cases . . . as a punishment of the defendant and as a deterrent to others from following his example." *Di Giovanni v. Pessel*, 260 A.2d 510, 511 (N.J. 1970) (citing W. Prosser, Handbook on the Law of Torts § 1, at 9–10 (2d ed. 1955)). Here, Plaintiffs have failed to set forth any factual allegations suggesting that any defendant acted with actual malice or wanton and willful disregard of the safety of foreseeable plaintiffs. Accordingly, Plaintiffs' claims for punitive damages are dismissed.

## IV. Leave to Amend

After amending as of right, a plaintiff may further amend its pleading with the opposing party's written consent or the court's leave. *See* Fed. R. Civ. P. 15(a)(2). The court should freely grant leave to amend when justice so requires. *Id.* The district court may exercise its discretion to deny leave to amend a complaint, but it must provide a reason for doing so, such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).

In their Oppositions to the present Motions, Plaintiffs seek the Court's leave to amend the Second Amended Complaint. (Opp'n to Def. Six Flags' Mot. at 9, ECF No. 35; Opp'n to Defs. Intaride and Intamin's Mot. at 28.) Allowing Plaintiffs to file an amended complaint to cure the deficiencies identified in this Opinion would not cause undue delay or undue prejudice to Defendants in this case, nor would amendment be entirely futile. Plaintiffs are granted leave to file an amended complaint within fourteen days of the date of this Opinion.

## **CONCLUSION**

For the foregoing reasons, Defendants Intaride and Intamin's Motion to Dismiss is granted in part and denied in part, and Defendant Six Flags' Motion to Dismiss is granted in part and denied in part. An appropriate Order will follow.

Date: January 21, 2020

*/s/ Anne E. Thompson*
ANNE E. THOMPSON, U.S.D.J.